IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN L. ANGNEY and GINA
GIAMPIETRO-ANGNEY ,

        Plaintiffs,

v.

ANTONIO C. DIMARCO an individual, a/k/a
SAMUEL RICHARD SEKEL, II, ET AL.,

        Defendants.

09cv0192
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

### I.    INTRODUCTION

This case involves allegations of various violations of Racketeer Influenced and Corrupt Organizations Act (RICO) (Count X), and state law claims of breach of contract, unjust enrichment, conversion, specific enforcement of the Warranties of DiMarco and U.G. Media, accounting, and civil conspiracy (Counts I - IX). Before this Court is Defendants' Motion for Summary Judgment (Doc. No. 32) pursuant to Rule 56© of the Federal Rules of Civil Procedure as well as Plaintiff's Motion for Summary Judgment Re The Issue of Jurisdiction (Doc. No. 36). For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 32) will be GRANTED as to Count X and this Court will decline to exercise jurisdiction as to Counts I - IX. Plaintiffs' Motion for Summary Judgment Re The Issue of Jurisdiction (Doc. No. 36) will be DENIED.

## II.     PROCEDURAL POSTURE

Plaintiffs Brian L. Angney ("Angney") and Gina Giampietro-Angney ("Giampietro") (Angney and Giampietro collectively referred to as "Plaintiffs"), commenced the present action by filing a Complaint (Doc. No. 1) on February 17, 2009 against Antonio C. DiMarco ("DiMarco"), Paul A. DiMarco, Christopher L. Paterra ("Paterra"), Stephanie Nirschl ("Nirschl"), Larra Corp., Inc. ("Larra"), and U.G. Media, LLC ("U.G.") (collectively referred to as "Defendants").

The Complaint alleges one federal claim and eight state law causes of action against Defendants. (Doc. No. 1).  The sole federal claim is a civil action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. ("RICO").  Plaintiffs allege this Court has jurisdiction based upon 28 U.S.C. § 1331 (federal question).

On July 22, 2009, Defendants filed a Motion to Dismiss Plaintiffs' Complaint (Doc. No. 9) alleging that Plaintiffs' RICO claim is barred by the applicable four year Statute of Limitations, and therefore, that this Court should decline to exercise supplemental jurisdiction over the remaining state law claims, which could be properly raised in state court.  On July 23, 2009, this Court ordered Plaintiffs to file a RICO Statement. (Doc. No. 13).  Plaintiffs filed their RICO Statement on August 4, 2009. (Doc. No. 14).  This Court thereafter entered an Order enabling the parties to engage in limited discovery. (Text Order 8/26/2009).  The Order further directed the parties to resolve the threshold "jurisdictional" issues by Motions for Summary Judgment.  Cross Motions for Summary Judgment were filed by both Plaintiffs and Defendants on December 22, 2009. (Doc. Nos. 32 and 36).  The instant motions are now ripe for review.

### III.     LEGAL STANDARD

Fed.R.Civ.P. 56© provides that on a motion for summary judgment, the "judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56 of the Federal Rules of Civil Procedure 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), quoting *Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted).

An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."), citing *Anderson* and *Celotex Corp.*  Recently, the United States Supreme Court  "emphasized, [w]hen the moving party has carried its burden under Rule 56©, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole

3

could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372 (2007) (internal quotations omitted), quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, a court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

### IV.     FACTUAL BACKGROUND[1]

#### 1.     *ELEMENTS LOANS*

In May, 2004, Defendant DiMarco promoted a proposed entertainment event, publicized as "Elements". The "Elements" event was a proposed event to be presented at the David L. Lawrence Convention Center ("the Convention Center") in Pittsburgh, Pennsylvania, on July 10-11, 2004. (Doc. No. 1, ¶14-15). To facilitate promotion of "Elements," Defendant DiMarco formed, managed, and operated Larra Corp., Inc. (Doc. No. 1, ¶16). On June 10, 2004, a loan in the amount of $175,000 was made by Plaintiff, Brian L. Angney, for the purpose of financing the "Elements" 2004 event. Defendant DiMarco represented that the loan would be repaid plus

---

[1] The factual background is limited to discussion of alleged RICO activities. The parties do not appear to dispute the underlying core factual background, only the impact of, and inferences to be drawn therefrom.

$50,000 on or after June 21, 2004, from ticket sale proceeds. (Doc. No. 1, ¶43(e)).  DiMarco promised to pay Angney an additional $25,000 on or before July 10, 2004.  *Id.* at ¶43(f).  On June 18, 2004, DiMarco directed Angney to lend $35,000 to be disbursed by Angney directly to Michael Gilman, of DIZZE Entertainment, on or before June 18, 2004.  *Id.* at ¶46(a).  DiMarco agreed to pay Angney, on or before July 5, 2004, the principal amount of $35,000 plus interest of $10,000.  *Id.* at ¶46(b).

On July 9, 2004, DiMarco caused Defendant Larra Corp. Inc. to file a voluntary petition in bankruptcy Chapter 7 proceedings.  (Doc. No. 1, ¶36).  The "Elements" event did not occur and no repayment of the loan occurred.  (Doc. No. 1, ¶28).  On or about March 11, 2005, DiMarco filed a voluntary petition in personal bankruptcy in Chapter 7 proceedings.  Discharge of the debtor DiMarco was granted by Court Order on August 1, 2006. (Doc. No. 1, ¶36).

   2.   *U.G. MEDIA LOANS*

Pursuant to the formation and development of Defendant U.G. Media internet ventures, DiMarco introduced Plaintiff to Defendant Christopher L. Paterra ("Paterra").  On April 7, 2005, Angney loaned $101,746 to DiMarco, Paterra and U.G. Media.  *Id.* at ¶50(a).  Paterra agreed to repay the sum of $101,746 with interest upon "completion in full of the U.G. Media Proposal".  *Id.* at ¶50(b).  Between April 11, 2005 and April 25, 2006, Plaintiff loaned and distributed $152,682.90 to Paterra and U.G. Media.  *Id.* at ¶50(e).  DiMarco and Angney formed U.G. Media as a Florida LLC on May 31, 2005.  *Id.* at ¶52.  Plaintiff DiMarco agreed to loan Defendants up to $415,000 on December 19, 2005.  *Id.* at ¶53.  Angney was to retain a 50% interest in U.G. Media until Angney was repaid in full for $415,000 plus repayment of $210,000 on a Prior Loan obligation.  *Id.* at ¶53(d).  In total, Angney loaned $534,291.654 to DiMarco and U.G. Media.

5

On September 25, 2006, DiMarco and U.G. Media allegedly reinstated and reformed U.G. Media, removing Angney as a manager and member. *Id.* at ¶57.

On February 16, 2006, Angney entered a loan agreement with DiMarco and U.G. Media for an amount not to exceed $415,000. *Id.* at ¶64(a). On February 17, 2006, Paul DiMarco and Antonio DiMarco severally and jointly, personally guaranteed a business capital loan obligation of U.G. Media, LLC, up to a total borrowed amount of $1,500,000. *Id.* at ¶66. No payment has been made to Angney pursuant to any loans made by Antonio DiMarco, Paul DiMarco, or U.G. Media, LLC. *Id.* at ¶67.

       3.      *PERSONAL LOANS*

Finally, on May 15, 2006, Gina Giampietro-Angney loaned Antonio DiMarco $15,000. DiMarco was to repay $15,000 plus $1,000 interest on or before July 12, 2006. *Id.* at ¶68©. To date, no repayment has been made on the loan principal or interest. *Id.* at ¶68(d). In sum, Plaintiffs loaned the Defendants $298,894.79 for the "Elements event," $560,291.65 for the U.G. Media Internet venture and $15,000 to Antonio DiMarco personally. *Id.* at ¶64(j).


      V.      **DISCUSSION**

      **A.**      **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (Doc. No. 32)

In its Motion for Summary Judgment, Defendants' argue that Plaintiffs' sole federal claim is barred by the applicable statute of limitations. Plaintiffs' Complaint was filed on February 17, 2009, with the RICO count as the only basis for this Court's original jurisdiction. (Doc. No.1). The Plaintiffs' sole federal claim of civil violations of RICO is governed by a four (4) year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S.

143, (1987). Therefore, according to Defendant, if Plaintiffs' claim accrued prior to February 17, 2005, the claim is untimely.

The parties agree that the applicable statute of limitations is four years, but dispute the date on which the statute of limitations began to run. Defendants argue that Plaintiffs knew or should have known of the alleged RICO scheme by no later than July, 2004, when it was known the "Elements" event would not take place. (Doc. No. 41, 5). Conversely, Plaintiffs argue that the alleged RICO scheme did not begin until April 7, 2005, which was within the statute of limitations. (Doc. No. 36, 1).[2]

The United States Court of Appeals for the Third Circuit has adopted the injury discovery rule for RICO cases, "whereby a RICO claim accrues when plaintiffs knew or should have known of their injury." *Mathews v. Kidder Peabody & Co.*, F.3d 239, 252 (3d Cir. 2001). The injury discovery rule "has both subjective and objective components and, with respect to the subjective, a claim accrues no later than when the plaintiffs themselves discover their injuries." *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 484, 507 (3d Cir. 2006)(internal quotations

---

[2] In Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 41), and in Plaintiffs' Reply Brief (Doc. No. 43), Plaintiffs have attempted to avoid the statute of limitations issue by now agreeing to drop Larra Corp., as a Defendant in this lawsuit, in hopes that their alleged "New and Independent Injury" theory might hold more weight. For the reasons set forth in footnote #3, the Court finds this theory has had little, to no, traction in the Courts of this Circuit. Moreover, Plaintiffs' tactical decision to dismiss Larra Corp., is a thinly veiled attempt to change history and is of no consequence here, because the Court still finds that, even without the allegations regarding Larra Corp., the events that occurred in 2004 (which were allegedly perpetrated by remaining Defendant DiMarco) provided Plaintiffs with ample inquiry notice of their injuries. With or without preserving Larra Corp. as a Defendant, Plaintiffs cannot rewrite history, and that history is set forth throughout its Complaint, and other documents of record as detailed herein in an attempt to delete their statute of limitations problem. See Doc. No. 1, at ¶¶ 27-46.

omitted)(citing *Mathews*, 260 F.3d at 252).

The Court of Appeals for the Third Circuit has set forth a two-pronged approach to determine whether Plaintiffs' suit was filed within RICO's statute of limitations. First, the Court must make an objective inquiry into whether the defendant had met its burden "to show the existence of 'storm warnings.'" *Mathews*, 260 F.3d at 252. Courts "perform an objective inquiry to determine when plaintiffs should have known of the basis of their claims, which depends on whether [and when] they had sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity." *Cetel,* 460 F.3d at 507 (citing *Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006)). Plaintiffs possess inquiry notice "whenever circumstances exist that would lead a reasonable investor of ordinary intelligence, through the exercise of due diligence, to discovery of his or her injury." *Id.* (citing *Mathews*, 260 F.3d at 252). In *Mathews*, the Court of Appeals for the Third Circuit, explained that storm warnings "may take numerous forms", such as "any financial, legal or other data that would alert a reasonable person to the probability that misleading statements or significant omissions had been made." *Mathews,* 260 F.3d. at 252.

Secondly, the Court must perform an inquiry which is "both subjective and objective" into whether plaintiffs have met their burden "to show that they exercised reasonable due diligence and yet were unable to discover their injuries." *Id.*

### 1.   EXISTENCE OF STORM WARNINGS

Plaintiffs' averments in their Complaint (Doc. No. 1), RICO Statement (Doc. No. 14 ), and discovery responses demonstrate that the alleged RICO scheme began in 2004 and that Plaintiffs were actually aware of the alleged scheme at that time. In their complaint, Plaintiffs

aver that "[c]ommencing May 1, 2004 and continuously thereafter through the present time, the Defendants have engaged in a pattern of racketeering activity. . . ." (Doc. No. 1). Additional averments in Plaintiffs' Complaint continue to demonstrate that Plaintiffs were aware of alleged racketeering well outside of the statute of limitations period. Specifically, on June 21, 2004, Angney was to receive an initial payment of $225,000 for the June 10, 2004 loan; on July 10, 2004, Angney was to receive the final payment of $25,000 for the June 10, 2004 loan; and, on July 5, 2004, Angney was to receive a payment of $45,000 for the June 18, 2004 loan. (Doc. No. 32, ¶43(a)-(d)). However, no payments were made towards any of these debts. Furthermore, the loans were to be used to help finance the "Elements" show, which did not occur as scheduled on July 10-11, 2004. The maturity dates of June 21, July 5 and July 10, 2004 passed without any payments to the outstanding amounts due, and additionally, Larra's bankruptcy filing on July 9, 2004 alerted or should have alerted Plaintiffs to the alleged RICO scheme. Even without actual knowledge of the alleged RICO scheme, the failure of the "Elements" event to occur as well as multiple failures to make payments on various loans would have alerted a reasonable investor through exercise of due diligence to discover his or her injury. *Mathews*, 260 F.3d at 252.

      As the Court of Appeals for the Third Circuit has stated, this Court's inquiry centers on the Plaintiffs' knowledge and "whether they had sufficient information of possible wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity." *Benak*, 435 F.3d at 400 (internal quotations omitted)(quoting *In re NAHC Inc. Sec. Litig.*, 306 F.3d 1314, 1325 (3d Cir. 2002)). Storm warnings and inquiry notice are objective determinations and thus, "an investor is not on inquiry notice until a reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning." *In re NAHC*, 306 F.3d at

9

1325(internal quotations omitted) (quoting *Mathews,* 260 F.3d at 252). While inquiry notice may be triggered by "evidence alerting an investor to the probability of wrongdoing . . . inquiry notice may be triggered by sufficient information of possible wrongdoing." *In re Merck & Co., Inc. Securities, Derivative & "Erisa" Litigation,* 543 F.3d 150, 161.

In *Elite Sportswear Products v. New York Life Insurance Co.*, 2006 WL 3052703 (E.D.Pa. 2006), Elite alleged, among other claims, that New York Life Insurance fraudulently induced Elite to charge loans to various life insurance policies for its employees. The District Court, in granting Defendants Motion for Summary Judgment, found that "Elite knew or reasonably should have known through the exercise of due diligence" that fraudulent conduct was occurring. *Elite*, 2006 WL 3052703, *5. The Court emphasized that statements made by New York Life employees "were inconsistent with how the loans actually were being administered by NYLIC." *Id*. at *5. The Court were on to state that, " a reasonable person, when faced with the notices, would have heard the storm warnings of the alleged fraud." *Id.* at *5.

As in *Elite*, Plaintiffs in the present case had sufficient "storm warnings" to alert them to alleged RICO violations beginning in 2004. As rehearsed, these warnings included Defendant DiMarco's failure to make repayments, failure of the Elements 2004 event to occur, and subsequent bankruptcy filings which are consistent with storm warnings and should have alerted Plaintiffs to the alleged RICO scheme well outside of the applicable four year statute of limitations. While Plaintiffs now attempt to recast the allegations regarding the activities in 2004 as mere background information, judging the facts in the light most favorable to the non-moving party, this Court can not agree.

### 2. PLAINTIFFS FAILED TO EXERCISE REASONABLE DUE DILIGENCE

Having found that storm warnings existed of culpable activity on the part of Defendants, the next inquiry is whether Plaintiffs have met the burden "to show that they exercised reasonable due diligence and yet were unable to discover their injuries." *Mathews*, 260 F.3d at 252. Plaintiffs are required to provide details of an alleged scheme in a RICO statement, details of which may not be known at the advent of the scheme. Therefore, "Plaintiffs need not know all of the details or 'narrow aspects' of the alleged fraud to trigger the limitations period; instead, the period begins to run from 'the time at which plaintiff should have discovered the general fraudulent scheme." *Mathews*, 260 F.3d at 252, (quoting *In re Prudential Ins. Co. Sales Practices Litig.*, 975 F. Supp. 584, 599 (D.N.J. 1997)). However, "private civil actions seek not only to compensate victims but also to encourage those victims diligently to investigate and thereby to uncover unlawful activity." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195 (1984). See *Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143 (1987).

In the present case, as stated above, Defendants allegedly failed to hold the Elements event as scheduled and further failed to make any repayments on debts owed to the Plaintiffs. However, Plaintiffs continued to invest with Defendants over $534,291 in four separate loans over an extended period of time from June 2004 until February 16, 2006. These further transactions in face of Defendants' bankruptcy, mismanaged events and failure to make payments on debts owed demonstrates Plaintiffs' failure to act with reasonable due diligence in uncovering any alleged RICO scheme.[3]

---

[3] Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment raises an argument based on the New and Independent Injury Doctrine. (Doc. No. 40). There is no support

Judging the facts of the alleged RICO violations along with pleadings surrounding the statute of limitations issue in favor to the nonmoving party, Plaintiffs have failed to present any genuine issue of material fact and Defendants are entitled to summary judgment as to Count X because Defendants have met its burden to show the existence of storm warnings outside of the applicable statute of limitations.  Further, Plaintiffs have failed to present record evidence to show that they exercised reasonable due diligence and yet were unable to discover their injuries.

3. *STATE LAW CLAIMS* (Counts I-IX)

Because Plaintiffs' sole federal law claim (Count X) will be dismissed, this Court must decide whether to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims (Counts I - IX).  Section 1367 of Title 28 of the United States Code provides that a district court may exercise supplemental jurisdiction over state law claims if they form the same case and controversy as the federal claims. 28 U.S.C. § 1367(a).  However, a district court may decline to exercise jurisdiction over the supplemental claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367©.  While this rule appears to be permissive, the United States Court of Appeals for the Third Circuit has held that a "district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

---

in the record that alleged RICO conduct occurring after February 17, 2005 forms a new and independent injury.  Furthermore, the New and Independent Injury Doctrine has been expressly rejected by the United States Supreme Court, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187-191 (1997), and furthermore, it has not been adopted by the United States Court of Appeals for the Third Circuit.  *Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239 (3d Cir. 2009).

Given the early stage of these proceedings, prior to significant discovery, economy concerns are not implicated, and it would not be unfair to decline to exercise jurisdiction over the state law claims. This Court will decline to exercise its jurisdiction over the state law claims (Counts I - IX), and will dismiss said claims without prejudice. Pursuant to 42 Pa. C.S.A. §5103(b), Plaintiffs may pursue their claims in state court.

### B. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE THE ISSUE OF JURISDICTION (Doc. No. 36)

Plaintiffs' Motion for Summary Judgment (Doc. No. 36, 4) argues that jurisdiction is proper in this Court pursuant to 18 U.S.C. § 1964(c) as any person injured in his business or property by reason of a violation of 18 U.S.C. §1962 may sue in the appropriate United States District Court. Plaintiffs further argue that Count I alleging RICO violations began in April 7, 2005 and thus the sole federal law claim is not barred by the applicable four year statute of limitations. (Doc. No. 36, 5).

This is not a question of the Court's subject matter jurisdiction as raised in the Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment. (Doc. No. 40). Jurisdiction as noted by the United States Supreme Court "is a word of many, too many, meanings." *Steel Co.v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998). A recent United States Supreme Court decision has clarified that time prescriptions, however emphatic, "are not properly typed 'jurisdictional.' " *Scarborough v. Principi*, 531 U.S. 401,414 (2004).

This Court, for the reasons previously stated in this opinion, finds that Plaintiffs' sole federal claim is barred by the four year statute of limitations. Therefore, this Court will dismiss Count X and will decline to exercise jurisdiction over the remaining state law claims. (Counts I-

IX).  Plaintiffs' Motion for Summary Judgment Re The Issue of Jurisdiction will be DENIED.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment Dismiss, (Doc. No. 32), pursuant to Federal Rule of Civil Procedure 56 will be **GRANTED** as to Count X. Count X will be dismissed with prejudice.  The Court will decline to exercise jurisdiction over state law claims (Counts I - IX).  Pursuant to 42 Pa. C.S.A. §5103(b), Plaintiffs may pursue their claims in state court.

Plaintiffs' Motion for Summary Judgment Re the Issue of Jurisdiction (Doc. No. 36) will be **DENIED**.

An appropriate order follows.

**SO ORDERED** this 22nd Day of January, 2010

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All Registered ECF Counsel and Parties